## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

JUAMANDA FIELDS, individually and )
on behalf of all others similarly situated, )
                                      )
               **Plaintiff,** )         **Case No: 1:14-cv-7202**
                                        )
        **v.** )
                                        )         **Judge Ronald A. Guzmán**
**BANCSOURCE, INC.,** )
                                        )
         **Defendant.** )

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Plaintiff's motion for conditional collective action certification [23] is granted. The Court orders the parties to meet and confer in an effort to agree on a proposed notice consistent with this Order. The parties shall submit such agreed proposed notice to the Court within ten days of the issuance of this order, or if unable to reach agreement shall each separately submit a proposed notice and brief statement in support within the same ten-day period.

## STATEMENT

Juamanda Fields ("Plaintiff") brings this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, seeking damages for the alleged failure of Bancsource Inc. ("Defendant") to pay Plaintiff and similarly situated employees overtime wages for work in excess of 40 hours per week. (Compl., Dkt. # 1.) This matter is before the Court on Plaintiff's motion for conditional certification as a collective action, filed March 27, 2015. (Mot. Certify Class, Dkt. # 23.) For the reasons that follow, the Court grants Plaintiff's motion and conditionally certifies the class for purposes of facilitating notice.

## Background

Plaintiff was formerly employed by Defendant, a corporation that provides installation, maintenance, and repair services for bank equipment such as automatic teller machines. (Def.'s Resp., Dkt. # 27, at 2.) Plaintiff worked as a field technician in the Chicago area, during which time his primary duty was to travel to customer banks each day and repair or service automatic teller machines. (Mot. Certify, Dkt. # 23 at 1.) According to Plaintiff, his routine as a field technician involved receiving text messages early in the morning with his daily assignment, after which he logged on to Defendant's work processing software called Techs Only in order to review detailed information about the assignments and enter his estimated times of arrival for each customer. (*Id*. at 3.) After doing so, he would map out his driving route, load up his vehicle with the necessary equipment, and drive to the first customer needing equipment repaired. (*Id*.)

In this suit, Plaintiff alleges that Defendant violated the Fair Labor Standards Act by: (1) failing to pay Plaintiff for time he worked prior to arriving at his first assignment each day, including time spent accessing Techs Only to review his day's assignments, reporting estimated times of arrival, entering time on timekeeping software, communicating with his supervisors and customers, loading his work vehicle with equipment, and travelling to the location of his first assignment; (2) automatically deducting one hour from his daily working time for lunch, whether or not he actually took a lunch break; and (3) failing to pay Plaintiff for work he was required to do after his shift was officially over, such as driving home, completing paperwork and unloading his vehicle. (Mot. Certify, Dkt. # 23 at 1.)

On November 24, 2014, the Court permitted Plaintiff to conduct limited discovery regarding conditional class certification prior to his filing the instant motion. (Dkt. # 16.) Now before the Court is Plaintiff's motion for conditional certification, which alleges that the

practices of which he complains were aspects of company policy that applied to all field technicians.

## Legal Standard

The FLSA expressly permits one employee to file suit "on behalf of himself…and other employees similarly situated," provided each similarly situated employee opts into the suit in writing. *See* 29 U.S.C. § 216(b). Because the FLSA does not specify how collective actions are to proceed, the management of these actions has been left to the discretion of the district courts. *See Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170-72 (1989). Courts in this district have generally employed a two-step process for determining whether an FLSA suit should be certified as a collective action. *See Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008).

The parties agree that this action is currently at the first of the two stages, in which Plaintiff is only required "to make a minimal showing that others in the potential class are similarly situated." *See Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004). In making this determination, courts are to use a "lenient interpretation" of the term "similarly situated," as this stage requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Jirak*, 566 F. Supp. 2d at 847 (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)). In light of this relaxed level of scrutiny, "plaintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions or pay." *Id.* at 848-49.

## Discussion

Plaintiff seeks to send opt-in notices to and conditionally certify a nationwide class consisting of:

> All individuals who currently work or formerly worked for Bancsource as Field Technicians, Field Service Technicians, Customer Service Engineers, Field Engineers, Technicians, or any other similar position[1] from March 27, 2012 to the present.

(Mot. Certify, Dkt. # 23 at 1.) There are 252 field technicians currently employed by Defendant that meet this class definition, though that number was as high as 300 at one point in the past few years. (Dkt. # 23-1 at 35.) Since Plaintiff has filed his motion, two other employees have opted in by filing written notice with the Court. (Dkts. # No. 26, 28.)

*Plaintiff's declarations*

As an initial matter, the Court must decide what – if any – consideration to give to the declarations of Plaintiff and one of the opt-ins, Reginald Floyd. Defendant points to a number of problems with these declarations and urges the Court to afford them no weight. For the reasons below, the Court agrees that the declarations are of little or no probative value and does not consider them in determining whether Plaintiff has met his factual burden for purposes of conditional certification.

Despite the Court's order that limited class discovery close by March 13, 2015, these declarations were not mentioned in Plaintiff's March 27 motion for conditional certification and were therefore not addressed in Defendant's response. They appear for the first time in Plaintiff's reply brief filed May 1, 2015, by which time Defendant would have no opportunity to respond to them. Waiting until a reply to raise important arguments or evidence "is a stratagem that the courts have frowned on." *Gen. Ins. Co. of Am. v. Clark Mali Corp*., No. 08 C 2787, 2010 WL

---

[1] According to Plaintiff, these various job titles used by Defendant all referred to employees with essentially the same duties – specifically, travelling to customer banks to repair equipment. For convenience, the Court will refer to these proposed class members as "field technicians" throughout.

807433, at *4 (N.D. Ill. Mar. 10, 2010); *see also United States v. Portis*, 542 F.2d 414, 418 (7th Cir. 1976) (expressing disapproval of "gamesmanship in getting the last word"). While Plaintiff can make a colorable argument that Floyd's declaration was not available earlier because he did not opt into the suit until April 22, Plaintiff himself was surely available to give a more timely declaration.[2] Furthermore, neither of the declarations attached to Plaintiff's reply brief was signed, and as such they were not valid evidence before the Court. *See Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994) (noting that unsigned affidavits are properly accorded "no evidentiary significance"). Plaintiff attempted to remedy this by filing signed copies of the declarations on May 4, 2015 – three days *after* his reply was due – without having sought leave of the Court to do so. (Dkts. # 30, 31.)

While Plaintiff's submission of signed copies might cure the initial deficiencies in the declarations, more fundamental problems cast their reliability into doubt. Most troublingly, Plaintiff's purported declaration directly contradicts his deposition testimony on a number of topics both material and ancillary to his claims. These differences include, for example, an 11-month discrepancy in the date Plaintiff started working for Defendant, as well as inconsistent testimony regarding whether he recorded his start time upon leaving home at 8:00 a.m. or upon arriving at his first assignment. (*Compare* Dkt. # 30 at ¶ 1 *with* Dkt. # 27-1 at 41, *and* Dkt. # 30 at ¶ 10 *with* Dkt. # 27-1 at 123-24.) Allegations in a declaration that contradict earlier deposition testimony should generally not be credited. *See Beckel v. Wal-Mart Assocs.*, 301 F.3d 621, 623 (7th Cir. 2002).

---

[2] In light of this dubious timing, the Court granted Defendant an opportunity to file a sur-reply to address the contents of the declarations. (Dkt. # 34.)

The timing of these declarations, the fact that they were submitted unsigned, and the contradictions between Plaintiff's deposition testimony and his declaration cast sufficient doubt on the declarations' reliability that the Court affords them no evidentiary weight.

*Conditional certification*

Even without the declarations, however, Plaintiff has made a sufficient showing of commonality to meet his modest factual burden at the conditional certification stage.

Defendant makes much of Plaintiff's deposition testimony admitting that he has little personal knowledge regarding how other field technicians were treated, particularly those outside Chicago. (Def.'s Resp., Dkt. # 27, at 5-6.) At the conditional certification stage, "plaintiffs cannot rely on their allegations alone to make the required modest factual showing." *Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770, 786 (N.D. Ill. 2007). Defendant's argument misses the mark, however, because personal knowledge of other employees is not the only way to make the necessary factual showing. Where, as here, the violations a plaintiff complains of stem from written policies applicable to the proposed class, such policies (and the testimony of corporate officers regarding them) may be enough to meet the Plaintiff's modest factual burden. *See Lukas v. Advocate Health Care Network & Subsidiaries*, No. 14 C 2740, 2014 WL 4783028, at *3 (N.D. Ill. Sept. 24, 2014) (noting that "the testimony of defendants' own witness that a common plan exists" was sufficient to satisfy the plaintiff's "minimal step one burden"). Because Plaintiff alleges that Defendant's formal overtime and compensation policies violate the FLSA, it is not essential that he be able to identify particular other employees victimized by those policies.

Here, the testimony of Defendant's own officers goes a long way to establishing that field technicians were subject to similar job conditions and policies relevant to Plaintiff's claims. Jay Patterson, Defendant's senior vice president of logistics and operations, testified that all field technicians are paid hourly rates and classified as nonexempt, with the exception of 17 or 18 who occupy a "management role." (Dkt. # 23-1 at 35-36.) Over 90% of the field technicians work full-time, all are given company laptops or tablets, and 95-98% drive company-issued vehicles. (*Id*. at 37-39.) While there are two or three different written job descriptions for different levels of field technicians, the majority service ATMs and are generally expected to start each day by reviewing their assignments through the Techs Only application. (*Id*. at 40-41.) As a general rule, field technicians are required to respond to the text messages giving them assignments within 15 minutes, and must contact the customer within 20 to 30 minutes to provide an estimated time of arrival. (*Id*. at 47-48, 54.) Time spent driving to the technician's first assignment was considered commute time unless it exceeded 30 minutes or 30 miles, and such commute time was not compensable. (*Id*. at 94-95.) Over the past four years, employees were always expected to take a one-hour meal break and were not paid for that time, though whether the hour was deducted automatically or the employee had to manually "punch out" depended on the payroll system in use at the time. (*Id*. at 99-102.) Field technicians who worked through their lunch breaks could be compensated if they provided justification and cleared the overage with supervisors. (*Id*. at 149-150.) After their daily assignment were complete, field technicians were expected to take laptops and tablets out of their cars and were responsible for general maintenance of their work vehicles. (*Id*. at 86-87.) This testimony bolsters Plaintiff's allegation that field technicians were subject to consistent policies regarding meal breaks and tasks to be completed before or after the day's first customer visit.

Patterson's testimony is largely supported by Defendant's written policies regarding compensation and overtime. The policies were modified several times during the proposed class period, but all versions confirm that employees were expected to take a one-hour lunch break and could be paid for this time only by seeking approval. (Dkt. # 23-3.) Moreover, under all versions of Defendant's overtime policy, a field technician's workday started upon arriving at the site of the first assignment and commute time to and from his first job was not compensable if the drive took less than 30 minutes (or in some versions 45 minutes). (*Id*. at 2, 3, 5, 7, 9.) While Defendant cites to the deposition testimony of Plaintiff's supervisor to show various ways in which these policies may not have been exactly followed in practice, the fact that individual supervisors employed different starting time procedures than those reflected in the written policies does not change the fact that all employees were at least formally subject to the policies. Patterson's testimony confirms that from the company's perspective, the overtime policy in effect at any given time applied to all field technicians. (Dkt. # 23-1 at 98.)

In the face of this substantial evidence that field technicians were subject to the same compensation policies that Plaintiff alleges violates the FLSA, Defendant points to a number of differences in work responsibilities and procedures. This argument is "premature…at the first step of the collective action process," as concerns about whether class members share sufficient commonality of employment settings are properly raised at step two. *Smith v. Family Video Movie Club, Inc*., No. 11 C 1773, 2012 WL 580775, at *4 (N.D. Ill. Feb. 22, 2012). Moreover, the distinctions Defendant identifies are largely irrelevant. That approximately 20 of the field technicians worked part time, for example, may well be relevant for limiting the class later in this litigation. But the fact that the proposed class may prove slightly overinclusive does not mean that *conditional* certification simply for purposes of providing notice is inappropriate. Defendant

also attempts to escape the evidence that field technicians were similarly situated by delving into the merits of the case, arguing that while Plaintiff may have shown various common policies he has failed to show that they resulted in underpayment. Again, whether the common policies violate the FLSA is a question to be addressed later; all that Plaintiff needs to show at this stage is that he and the prospective class members he seeks to give notice of the suit are situated similarly.

*Notice deficiencies*

Although a plaintiff in an FLSA action is not required to affirmatively seek the district court's approval in sending out notices, "district courts in this district have regularly exercised discretionary authority over the notice process." *Anyere v. Wells Fargo, Co*., No. 09 C 2769, 2010 WL 1542180, at \*1 (N.D. Ill. Apr. 12, 2010); *see also Curless v. Great Am. Real Food Fast, Inc*., 280 F.R.D. 429, 436 (S.D. Ill. 2012) ("A district court has the discretion to regulate notice given to similarly-situated persons under the 'opt-in' provision of the Fair Labor Standards Act").

Defendant argues that even if Plaintiff is entitled to conditional certification, the proposed notice form Plaintiff submits is misleading or otherwise deficient in several ways. Specifically, Defendant takes issue with: (1) the description of the case, which Defendant believes reflects only Plaintiff's position; (2) the notice form itself, which Defendant feels creates the appearance that the notice is being sent by the Court rather than by Plaintiff's counsel; (3) the opt-in period that Plaintiff fixes at 75 days, which Defendant insists is unduly long; (4) a statement to the effect that if the action is unsuccessful opt-ins will not have to pay attorney's fees, which Defendant suggests is misleading because if the suit is unsuccessful Defendant may assert its

own fees against the class; (5) the absence of any statement noting that opt-ins may have to participate in depositions or other discovery at their own expense; and (6) Plaintiff's request to distribute notice via email, which Defendant asserts would be an undue burden and an invasion of employee's privacy, and would risk corruption or modification of the notice. (Def.'s Resp., Dkt. # 27, at 15.) The Court addresses each of these concerns below.

*See Woods v. New York Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982) ("We can think of no good reason for apparent judicial sponsorship of the notice, at a stage in the litigation when there has been no determination that the plaintiff's allegations have any merit"). Plaintiff also failed to respond to Defendant's fourth objection proposing that the notice include language explaining that opt-ins may have to participate in written discovery, be deposed, or testify at trial. Because the current notice fails to even hint that opt-ins will be taking on an obligation in addition to a potential monetary award, it does not allow them to make a fully informed decision regarding whether to join this suit. *See Espenscheid v. DirecStat USA, LLC*, No. 09-CV-625-BBC, 2010 WL 2330309, at \*11 (W.D. Wis. June 7, 2010) (modifying proposed notice to include warning regarding the obligations of opt-ins). However, the final clause of Defendant's proposed inclusion – warning that each opt-in must meet such obligations "possibly at his or her own expense" – seems intended simply to scare potential plaintiffs away. Instead, the notice should include only the following: "If you choose to opt in, you may be required to provide information or documents, appear for a deposition, testify at trial, or otherwise participate in this action."

With regard to the length of the opt-in period, Plaintiff insists that 75 days is reasonable and cites various cases from this district in which longer opt-in periods were approved. Defendant has not provided any cogent reason as to why a shorter notice would be more

appropriate in this case, simply insisting that 75 days is too long. The Court notes, however, that

Plaintiff's pleadings are replete with entreaties to the Court to make haste in certifying the class

because each day of delay means additional claims are lost to the statute of limitations. (*See, e.g.*,

Mot. Certify, Dkt. # 23 at 2) ("For each passing day that notice and an opportunity to join is not

provided to other similarly-situated [field technicians], their FLSA claims are being diminished

and may be extinguished outright due to the running of the statute of limitations.") The statute of

limitations for each potential plaintiff is not tolled until he or she opts in, and for this reason an

extended notice period may actually work to the detriment of the class. *See Fisher v. Michigan

Bell Telephone Co.*, 665 F. Supp. 2d 819, 828-29 (E.D. Mich. 2009) ("Unlike class actions under

Rule 23, conditional certification of a collective action under § 216(b) of the FLSA does not toll

the statute of limitations for potential plaintiffs"). *See Smallwood v. Illinois Bell Tel. Co.*, 710 F.

Supp. 2d 746, 753 (N.D. Ill. 2010) (rejecting Plaintiff's proposed 90-day opt-in period in favor of

a 60-day period, because the shorter window "should benefit the class, as it is likely to prompt

quicker responses" and thereby avoid losing claims to the statute of limitations).

Plaintiff also takes issue with the suggestion that the notice should include language

about Defendant's potential ability to assert fees, arguing that such language "is solely intended

to discourage potential opt-ins from asserting their rights." (Pl.'s Reply, Dkt. # 29, at 11.) The

language in Plaintiff's current proposed notice, however, states that "if there is no recovery, you

will not be responsible for *any* attorneys' fees." (Pl.'s Ex. D, Dkt. # 23-4) (emphasis added.)

Because class members may indeed have to pay Defendant's fees and expenses, this statement is

misleading; had this statement referred only to the opt-ins' responsibility for the fees of

*Plaintiff's* counsel it would be technically correct, but the assertion that opt-ins will not have to

pay "any attorney's fees" is simply not accurate. *Compare Fosbinder-Bittorf v. SSM Health Care*

*of Wisconsin, Inc*., No. 11-CV-592-WMC, 2013 WL 3287634, at \*7 (W.D. Wis. Mar. 21, 2013) (including in notice the sentence "If you do not prevail on your claim, court costs and expenses may possibly be assessed against the class") *with Anyere*, 2010 WL 1542180, at \*5 (denying defendant's request to include such a warning in the notice, where plaintiff's attorneys had agreed to provide such information to any potential plaintiff who contacted them); *Petersen v. Marsh USA, Inc*., No. 10 C 1506, 2010 WL 5423734, at \*6 (N.D. Ill. Dec. 23, 2010) (rejecting defendants' proposed language regarding costs as "unnecessary").

Finally, Plaintiff insists that he be given the email addresses and telephone numbers of the potential class members in order to facilitate notice, because Defendant regularly communicates with its employees by email and any privacy issues can be resolved with a protective order. Courts in this district have typically rejected privacy-based challenges regarding the addresses and phone numbers of potential opt-in plaintiffs. *See Anyere*, 2010 WL 1542180, at \*4 (noting that "[c]ourts in this district have regularly rejected [defendant's] privacy argument" regarding names and addresses of potential opt-ins); *Acevedo v. Ace Coffee Bar, Inc*., 248 F.R.D. 550, 554-55 (N.D. Ill. 2008) ("Due process requires an opportunity to discover this information at the present stage of litigation, and such due process rights are more compelling than the privacy rights of potential plaintiffs' addresses and phone numbers"). Defendant offers no argument why this reasoning should not extend to email addresses, and fails to suggest any reason that producing a list of email addresses would be more burdensome than doing the same for addresses or telephone numbers. Other courts have, however, expressed reluctance to allow email notice because of the ease with which recipients can modify or redistribute email messages. *See Espenscheid*, 2010 WL 2330309, at \*14. Although Defendant's raised this concern of "contamination of the email message," Plaintiff fails to address it in his reply brief.

Moreover, although Plaintiff has cited to a number of cases in this and sister districts in which email notice was permitted, he has offered no reason why in this case such a method is necessary or superior to notice by mail and telephone.

**Conclusion**

For the reasons set forth above, the Court grants Plaintiff's motion for conditional collective action certification [23]. The Court orders the parties to meet and confer in an effort to agree on a proposed notice consistent with this Order. The parties shall submit such agreed proposed notice to the Court within ten days of the issuance of this order, or if unable to reach agreement shall each separately submit a proposed notice and brief statement in support within the same ten-day period.

**Date**: June 5, 2015

_____

**Ronald A. Guzmán**
**United States District Judge**